1
2
3
4
5
6
7
8                UNITED STATES DISTRICT COURT

9               SOUTHERN DISTRICT OF CALIFORNIA

10

11   VISTAGE WORLDWIDE, INC.,            Case No.:  19-cv-01351-W (JLB)

12                        Plaintiff,
                                         **ORDER GRANTING IN PART AND**
13   v.                                  **DENYING IN PART MOTION FOR**
                                         **PROTECTIVE ORDER**
14   VIRGINIA KNUDSEN, et al.,
                                         **[ECF No. 25]**
15                        Defendants.

16
     AND RELATED COUNTERCLAIM.
17

18

19         Before the Court is a motion for protective order filed by Defendants TGMV, LLC

20   ("TGMV"), Leaders Edge Consulting, Inc. ("Leaders Edge"), and Virginia Knudsen

21   ("Knudsen) (collectively, "Defendants").  (ECF No. 25.)  Defendants seek a protective

22   order denying jurisdictional discovery propounded by Plaintiff Vistage International, Inc.

23   ("Vistage" or "Plaintiff") in response to TGMV's motion to dismiss for lack of personal

24   jurisdiction. (*Id.* at 1-2.) Plaintiff filed an opposition. (ECF No. 30.) On October 24, 2019,

25   the Court held a hearing on the motion and ordered supplemental briefing.  (ECF No. 32.)

26   Both parties filed supplemental briefs in accordance with the Court's order.  (ECF Nos. 33,

27   34.)

28   ///

                                            1

For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion for protective order.

# I. BACKGROUND

On July 19, 2019, Plaintiff commenced this action against Defendants. (ECF No. 1.) Plaintiff alleges, among other things, that (1) Knudsen breached a December 2012 Master Services Agreement ("MSA 1") and a Statement of Work ("SOW"), and (2) Knudsen and Leaders Edge breached an October 2013 Master Services Agreement ("MSA 2") and 2018 Transition Agreements. (*Id.* at ¶¶ 13-15, 26, 36-59.) With respect to TGMV, Plaintiff asserts claims for consumer fraud, tortious interference with contractual relations, tortious interference with prospective economic advantage, misappropriation of trade secrets, and unjust enrichment. (*Id.* at ¶¶ 69-75, 86-115.)

Plaintiff alleges that the action was properly filed in this Court because the underlying agreements contain a forum selection clause stating that "any and all actions or proceedings seeking to enforce any provision of this agreement shall be brought in the courts of the State of California, County of San Diego, including federal courts located therein." (*Id.* at ¶ 5; *see also* ECF No. 1-2 at 7, 24.) Plaintiff further alleges that specific jurisdiction exists as to TGMV, which is not a party to the underlying agreements, for the following reasons:

> (1) it was formed in part by Knudsen, and therefore, TGMV had actual and/or imputed knowledge that her conduct in forming and operating BOAR would harm Vistage; (2) TGMV knew or reasonably should have known that the conduct of Knudsen to form, develop, and/or operate BOAR based on the allegations within this complaint would damage Vistage, a company with its principal place of business in San Diego County, California; (3) the conduct of Knudsen relative to BOAR is nonetheless imputed to TGMV, because BOAR maintains no separate existence; and (4) the forum selection clause may nonetheless be enforced against TGMV because the alleged conduct of TGMV, by and through its agent Knudsen, is closely tied to the contractual relationships and breaches alleged herein. *Manetti–Farrow, Inc. V. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988).

(ECF No. 1 at ¶ 6.)

On August 12, 2019, TGMV filed a motion to dismiss for lack of personal jurisdiction. (ECF No. 8.) That motion remains pending, and no opposition has been filed. (*See* ECF No. 41.) In support of its motion to dismiss, TGMV attaches the declaration of Todd Nigro, one of its managers. (ECF No. 8-1.) Mr. Nigro represents, among other things, the following:

- The four managers and members of TGMV are:
  - Todd Nigro of Nigro Development LLC;
  - Guy Wells of Wells Cargo Inc.;
  - Michael Reiss of Southern Nevada Chiropractic; and
  - Virginia Knudsen of Leaders Edge Consulting, Inc.

- All four of the managers/members reside and work in Las Vegas.

- TGMV adopted the tradename "BOAR".

- TGMV has always maintained its separate identity as a Nevada limited liability company in good standing with the State of Nevada.

- TGMV operates under its own EIN, with bank accounts and records separate and apart from any other entity or person.

- TGMV is wholly owned by its members, and no one else. Specifically, the company is neither a member or manager of Leaders Edge, nor is TGMV a parent, subsidiary or affiliate of Leaders Edge.

- TGMV's principal place of business is located at 9115 W. Russell Road, Suite 210, Las Vegas, Nevada 89148. TGMV has never had any other place of business.

- TGMV is not registered as a foreign entity to do business in California and has never done any business with Vistage.

- TGMV has never entered into any agreement, oral or written, with Vistage. Specifically, TGMV has never agreed or consented to San Diego as the forum for any disputes between TGMV and Vistage.

- The articles of organization were filed on March 12, 2018.

- At the time the articles of organization were filed, personal development coaching was the intended business plan and purpose.

(*Id.*; *see also* ECF No. 25-1.)

On September 17, 2019, Plaintiff served a Federal Rule of Civil Procedure 30(b)(6) deposition notice on TGMV "on the issue of personal jurisdiction within the state of California." (ECF No. 25-2.) The deposition was noticed for October 21, 2019 in Las Vegas, Nevada. (*Id.* at 3.) The notice set forth the following topics for examination:

1. The formation and operation of TGMV, including its incorporation, structure, purpose for incorporation, owners, investors, capitalization, principal place of business, all physical locations, employees, business partners, independent contractors, and/or agents.

2. To the extent different than the prior category, the formation and operation of the business of BOAR, including its structure, purpose, owners, investors, capitalization, principal place of business, all physical locations, employees, business partners, independent contractors, and/or agents.

3. TGMV's business, where and how it conducts that business, and whether any of its business operations touch California.

4. To the extent different from the prior category, TGMV's operation of BOAR, where and how it conducts that business, and whether any of its business operations touch California.

5. TGMV's use of, association with, engagement of, employment of, agency with, and/or any other business relationship with Virginia Knudsen.

6. TGMV managers/members/owners' association with, engagement of, employment of, agency relationship with, and/or any other business relationship with Virginia Knudsen.

7. TGMV's knowledge of Virginia Knudsen's relationship with Vistage Worldwide, Inc. ("Vistage") in 2018 and to the present.

8. TGMV's knowledge, review, consideration, analysis and understanding of the contracts existing between Virginia Knudsen, Leaders Edge, and Vistage in 2018 and to the present, generally, and relative to choice of venue provisions that may be found therein.

9. All contact(s) TGMV has with the state of California since its formation and to the present.

10. All funding, resources, ownership, contractors, materials, know-how, and/or other things pertaining to TGMV arising from or found in California.

11. TGMV's knowledge of anything Virginia Knudsen or it has used, or is using to operate the business of BOAR, whether or not protected by confidentiality or as a trade secret, that originated with, was used by, or which facilitates, or facilitated the business of Vistage.

12. Any dialogue by and between Virginia Knudsen, TGMV, and/or any of its owners pertaining to competition with California-based Vistage in 2018 and 2019.

13. TGMV's knowledge of Virginia Knudsen's use of any Vistage materials to form, construct, develop, or operate BOAR.

14. TGMV's knowledge of Virginia Knudsen's use of any Vistage information to form, construct, develop, or operate BOAR.

15. Any contractual relationship or mere understanding pertaining to indemnity, by and between TGMV, BOAR, and Knudsen.

The notice also included the following document requests:

1. All DOCUMENTS pertaining to the formation and operation of TGMV, including its incorporation, structure, purpose for incorporation, owners, investors, capitalization, principal place of business, all physical locations, employees, business partners, independent contractors, and/or agents.

2. To the extent different than the prior category, all DOCUMENTS pertaining to the formation and operation of the business of BOAR, including its structure, purpose, owners, investors, capitalization, principal place of business, all physical locations, employees, business partners, independent contractors, and/or agents.

3. All DOCUMENTS pertaining to TGMV's business, where and how it conducts that business, and whether any of its business operations touch California.

4. To the extent different from the prior category, all DOCUMENTS pertaining to TGMV's operation of BOAR, where and how it conducts

that business, and whether any of its business operations touch California.

5. All DOCUMENTS pertaining to and/or relating to any contractual or business relationship by and between TGMV , BOAR, and/or Virginia Knudsen.

6. All DOCUMENTS pertaining to Virginia Knudsen's agreement to indemnify TGMV, its owners, and/or BOAR from Vistage.

7. All DOCUMENTS pertaining to Vistage shared by Virginia Knudsen with TGMV and/or BOAR prior to the filing of Vistage's lawsuit.

8. All DOCUMENTS pertaining to TGMV's knowledge, review, consideration, analysis, understanding and receipt of the contracts existing between Virginia Knudsen, Leaders Edge and Vistage in 2018 and to the present, generally, and relative to choice of venue provisions that may be found therein.

9. All DOCUMENTS TGMV and/or BOAR has created, received or sent to any entity or person in California since TGMV's formation to the present.

10. Any DOCUMENTS pertaining to funding, resources, ownership, contractors, materials, know-how, and/or other things arising from or found in California.

11. Any DOCUMENTS Virginia Knudsen has used, or is using to operate the business of BOAR, whether or not protected by confidentiality or as a trade secret.

12. Any DOCUMENTS pertaining, referring or relating to dialogue by and between Virginia Knudsen, TGMV, and/or any of its owners pertaining to competition with California-based Vistage in 2018 and 2019.

13. All DOCUMENTS pertaining to business plans for BOAR describing, referring, and/or relating to its geographical focus.

(*Id.*)

Presently before the Court is a motion for protective order filed by Defendants, seeking denial of the jurisdictional discovery propounded by Plaintiff in response to

TGMV's motion to dismiss for lack of personal jurisdiction. (*See* ECF Nos. 25, 34.) Plaintiff opposes. (*See* ECF Nos. 30, 33.)

## II. LEGAL STANDARD

### A. Personal Jurisdiction

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Because "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution," the court's inquiry centers on whether exercising jurisdiction comports with due process. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Daimler AG*, 571 U.S. at 125); *see also* Cal. Civ. Proc. Code § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."). Due process requires that the defendant "have certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

Depending on the strength of those contacts, there are two forms that personal jurisdiction may take: general and specific. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). Here, Plaintiff does not allege that TGMV is subject to general jurisdiction in California; instead, it alleges that specific jurisdiction exists. (ECF No. 1 at ¶ 6.) When a plaintiff relies on specific jurisdiction, he must establish that jurisdiction is proper for "each claim asserted against a defendant." *Picot*, 780 F.3d at 1211 (quoting *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004)). If personal jurisdiction exists over one claim, but not others, the court may exercise pendent personal jurisdiction over any remaining claims that arise out of the same "common nucleus of operative facts" as the claim for which jurisdiction exists. *Id.* (quoting *Action Embroidery Corp.*, 368 F.3d at 1181).

A three-part test is used to assess whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff has the burden of proving the first two prongs. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011). If he does so, the burden shifts to the defendant to "set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

The exact form of jurisdictional inquiry depends on the nature of the claims at issue. *Picot*, 780 F.3d at 1212. For claims sounding in contract, courts generally apply a "purposeful availment" analysis and ask whether a defendant has "purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Schwarzenegger*, 374 F.3d at 802 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). For claims sounding in tort, courts instead apply a "purposeful direction" test and look to evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere. *Id.* at 802-03. Here, Plaintiff asserts tort claims against TGMV.

In analyzing whether a court has specific personal jurisdiction over a tort claim, the Ninth Circuit applies the three-part "effects" test derived from *Calder v. Jones*, 465 U.S. 783 (1984). *Picot*, 780 F.3d at 1213-14 (citing *Schwarzenegger*, 374 F.3d at 803). Under

this test, a defendant purposefully directed his activities at the forum if he: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). In applying this test, courts must "look[] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Thus, a "mere injury to a forum resident is not a sufficient connection to the forum." *Id.* at 290. Rather, "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Id.*

The meaning of the term "intentional act" in the court's jurisdictional analysis is essentially the same as in the context of intentional torts; namely, the defendant must act with the "intent to perform an actual, physical act in the real world." *Picot*, 780 F.3d at 1214 (quoting *Schwarzenegger*, 374 F.3d at 806). The second prong of the test, "express aiming," asks whether the defendant's allegedly tortious action was "expressly aimed at the forum." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010). As to this prong, the exact nature of the court's analysis varies from case to case and "depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue." *Schwarzenegger*, 374 F.3d at 807.

## B.    Jurisdictional Discovery

Jurisdictional discovery may be appropriate and should ordinarily be granted "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Boschetto*, 539 F.3d at 1020 (quoting *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 n. 1 (9th Cir. 1977)); *see also Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). "A district court is vested with broad discretion to permit or deny discovery, and a decision 'to deny discovery will not be disturbed except upon the clearest showing that the denial of discovery results in actual and substantial prejudice to the complaining litigant.'" *Laub*, 342 F.3d at 1093 (quoting *Hallett v. Morgan*, 287 F.3d 1193, 1212 (9th Cir. 2002)). "Prejudice is established

if there is a reasonable probability that the outcome would have been different had discovery been allowed." *Id.* (citing *Martel v. Cnty. of Los Angeles*, 56 F.3d 993, 995 (9th Cir. 1995) (en banc)).

A plaintiff must have "at least an arguable claim" of jurisdiction before discovery is permitted.  *Id.*; *see also Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (affirming denial of discovery request where additional facts would be immaterial because jurisdiction did not exist "[a]s a matter of law"); *Razore v. Tulalip Tribes of Wash.*, 66 F.3d 236, 240 (9th Cir. 1995) ("A denial of discovery is proper when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction.") (internal quotation marks and citation omitted).  Mere speculation or belief that discovery will enable a plaintiff to establish personal jurisdiction is not enough.  *See Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986).  "Jurisdictional discovery need not be allowed . . . if the request amounts merely to a 'fishing expedition.'"  *Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 996 (C.D. Cal. 2013).

## III.  DISCUSSION

Plaintiff alleges that specific jurisdiction exists as to TGMV, which is not a party to the underlying agreements between Plaintiff and the other defendants, for the following reasons:

> (1) it was formed in part by Knudsen, and therefore, TGMV had actual and/or imputed knowledge that her conduct in forming and operating BOAR would harm Vistage; (2) TGMV knew or reasonably should have known that the conduct of Knudsen to form, develop, and/or operate BOAR based on the allegations within this complaint would damage Vistage, a company with its principal place of business in San Diego County, California; (3) the conduct of Knudsen relative to BOAR is nonetheless imputed to TGMV, because BOAR maintains no separate existence; and (4) the forum selection clause may nonetheless be enforced against TGMV because the alleged conduct of TGMV, by and through its agent Knudsen, is closely tied to the contractual relationships and breaches alleged herein.  *Manetti–Farrow, Inc. V. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988).

10

(ECF No. 1 at ¶ 6.)  With respect to the current dispute, the Court will address Plaintiff's arguments below.

## A.    Forum Selection Clause[1]

Plaintiff alleges that the forum selection clauses at issue may be enforced against TGMV "because the alleged conduct of TGMV, by and through its agent Knudsen, is closely tied to the contractual relationships and breaches alleged herein." (*Id.*)  A forum selection clause in a contract may apply to all defendants, even non-signatories to the contract, "where the alleged conduct of the nonparties is closely related to the contractual relationship." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007) (citing *Manetti–Farrow, Inc.*, 858 F.2d at 514 n.5); *see also TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1354 (9th Cir. 1990) ("It is not unreasonable or unjust to enforce [a forum selection] clause even though some of them did not sign the agreement."); *White Knight Yacht LLC v. Certain Lloyds at Lloyd's London & Other London Mkt. Insurers*, No. 18-CV-02616-BAS-BLM, 2019 WL 4303248, at *8 (S.D. Cal. Sept. 10, 2019).[2]

In *Manetti–Farrow*, the Ninth Circuit specified that "a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." *Manetti–Farrow, Inc.*, 858 F.2d at 514 n.5; *see also W. Boxed Meats Distribs., Inc. v. Parker*, No. C17-5156 BHS, 2017 WL 3034517, at *5 (W.D. Wash. July 18, 2017)

---

[1]    Courts, "sitting in diversity, must interpret forum selection clauses under federal common law, without regard to any choice of law provision in the subject agreement." *Kiland v. Bos. Sci. Corp.*, No. C 10-4105 SBA, 2011 WL 1261130, at *4 (N.D. Cal. Apr. 1, 2011) (citing *Manetti–Farrow, Inc.*, 858 F.2d at 514 n.5; *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009)).

[2]    A forum selection clause may also be enforced against a non-party "when the non-party is a third-party beneficiary of the contract with the clause." *White Knight Yacht LLC*, 2019 WL 4303248, at *8 (citing *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1180 (9th Cir. 2014)).  However, Plaintiff has not argued that TGMV is a third-party beneficiary of the contracts at issue.

("The Ninth Circuit has narrowly applied *Manetti* to conduct [by non-signatories] that is closely related to the contract containing the forum selection clause—not to its signatories or their conduct."). In this regard, courts have found parties to be closely related in a variety of situations. *See, e.g.*, *Manila Indus., Inc. v. Ondova Co.*, 334 F. App'x 821, 823 (9th Cir. 2009) (finding that the forum selection clause in a bulk registration agreement may be enforced against a non-party to the agreement where the non-party "claims rights to domain names which are covered by" the agreement); *White Knight Yacht LLC*, 2019 WL 4303248, at *9 (citing *Holland Am. Line, Inc.*, 485 F.3d at 456) (finding that a non-party may be "closely related when it is 'part of the larger contractual relationship' between the parties to the agreement with the forum selection clause"); *Meyer v. Howmedica Osteonics Corp.*, No. 14-cv-2496 AJB (NLS), 2015 WL 728631, at *13 (S.D. Cal. Feb. 19, 2015) (finding a non-party to an agreement with a forum selection clause to be closely related when resolution of the non-party's claim "requires determining the enforceability of a [non-compete] clause" in the agreement); *Comerica Bank v. Whitehall Specialties, Inc.*, 352 F. Supp. 2d 1077, 1082 n.6 (C.D. Cal. 2004) (holding that individual defendants that did not sign a contract were bound by a forum selection clause in the contract "because they are the owners and directors of . . . one of the parties to the contract").

District courts in this Circuit have disagreed on whether *Manetti–Farrow* applies to personal jurisdiction analysis; that is to say, whether being subject to a forum selection clause provides an independent basis for personal jurisdiction. *Compare Mazal Grp., LLC v. Barak*, No. CV 18-4983-DMG (FFMx), 2019 WL 4316244, at *2 (C.D. Cal. June 17, 2019) (denying motion to dismiss for lack of personal jurisdiction filed by non-signatory to a contract because he was closely related to the contract and therefore subject to its forum selection clause), *with Wescott v. Reisner*, No. 17-CV-06271-EMC, 2018 WL 2463614, at *3 (N.D. Cal. June 1, 2018) ("*Manetti–Farrow* addresses where the forum selection clause required the plaintiff to bring her own claims, not whether the clause permitted the plaintiff consistent with due process to haul non-parties into a particular court."). However, this Court need not resolve that issue because, for the reasons set forth below, the Court finds

that discovery directed to determination of the issues raised by *Manetti–Farrow* would not be appropriate in this particular case regardless of its applicability.

It does not appear that Plaintiff's requested discovery would assist the Court in resolving any questions raised by *Manetti–Farrow* analysis, even if applicable. On the contrary, courts conducting *Manetti–Farrow* analysis have looked to the nature of the claims relative to the contract containing the forum selection clause. Upon review of case law in this Circuit, courts do not appear to rely on discovery in making these determinations and Plaintiff has not cited a case from this Circuit indicating that discovery is necessary in circumstances such as those present here. *See W. Boxed Meats Distribs., Inc.*, 2017 WL 3034517, at *1-2, 5 (finding that a new business owned by defendants/former employees of the plaintiff which was allegedly formed with the purpose of competing with the plaintiff, in direct defiance of the former employees' employment agreement and which misused the plaintiff's confidential information and trade secrets in direct defiance of the employment agreement to be closely related because the former employees "are allegedly using the corporation to violate the terms therein"); *see also Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*, 108 F. Supp. 3d 816, 822 (N.D. Cal. 2015) ("With one exception, every district court in our circuit that has considered whether to apply a forum-selection clause to a corporate officer or related company that was not part of the agreement to which it applies in his or her individual capacity has enforced that forum-selection clause, *provided the claims in the suit related to the contractual relationship*." (emphasis added)).

Plaintiff cites a single out-of-circuit case, *Synthes, Inc. v. Emerge Med., Inc.*, 887 F. Supp. 2d 598 (E.D. Pa. 2012), which suggests that discovery may be relevant to determining whether "it should have been reasonably foreseeable to the non-signatory that situations might arise in which the non-signatory would become involved in the relevant contract dispute." *Id.* at 607 (quoting *Regions Bank v. Wyndham Hotel Mgmt., Inc.*, No. Civ.A.09–1054, 2010 WL 908753, at *6 (M.D. Tenn. Mar. 12, 2010)). In *Synthes*, the plaintiff company brought suit against three former employees and their new competing company, along with a non-signatory COO of that new company, for, *inter alia*, breach of

non-competition and non-disclosure agreements in their employment contracts and tortious interference with contracts. *Id.* at 602-06. In determining whether the non-signatory individual should be subject to the court's jurisdiction based on the forum selection clauses in his co-defendants' prior employment contracts, the court considered evidence presented by the plaintiff, including emails, business plans, and meeting minutes for the new company, and a deposition transcript of the non-signatory defendant. *Id.* at 610-11.

However, *Synthes* is factually distinguishable from the present case in a key respect. In *Synthes*, the court considered the plaintiff's evidence to determine whether the non-signatory individual should have reasonably foreseen becoming embroiled in the contract dispute which was governed by a forum selection clause. *See id.* at 607-12. The court determined that the evidence demonstrated that the non-signatory defendant "should have foreseen—and in fact did foresee—that he faced a broad likelihood of suit by [the plaintiff] on a theory of tortious interference with [his co-defendant's employment] contracts." *Id.* at 612.

Here, on the other hand, Knudsen, a signatory to the contracts at issue containing forum selection clauses, is admittedly a founding member and manager of TGMV. (*See* ECF No. 8-1.) This does not appear to be in dispute. Accordingly, Plaintiff has not demonstrated why discovery is necessary to determine the extent of TGMV's awareness of the underlying contracts. Jurisdictional discovery may be appropriate "where pertinent facts bearing on the question of jurisdiction are controverted." *See Boschetto*, 539 F.3d at 1020 (citation omitted). That is not the case here.[3]

_____

[3]    TGMV argues that Knudsen is not a party to MSA 2, the most recent master services agreement. (ECF No. 34 at 2-3.) However, Knudsen did sign MSA 2 on behalf of Leaders Edge and therefore was aware of the contract and its provisions. (*See* ECF No. 1-2 at Exh. C.) Knudsen also signed the Transition Agreements that incorporated the provisions of MSA 2. (*See id.* at Exh. E.)

For the foregoing reasons, the Court grants Defendants' motion for a protective order as to Plaintiff's request for jurisdictional discovery on the question of whether TGMV is closely related to the contracts at issue under *Manetti–Farrow*.

## B.    Alter Ego

Plaintiff alleges that "the conduct of Knudsen relative to BOAR is nonetheless imputed to TGMV, because BOAR maintains no separate existence." (ECF No. 1 at ¶ 6.) Without explicitly stating so in the complaint, Plaintiff appears to be alleging that TGMV, and therefore BOAR,[4] are the alter egos of Knudsen. In its supplemental brief, Plaintiff clarifies its argument, stating that "TGMV (and BOAR) are the alter egos of Knudsen, and they exist as a mere artifice to facilitate her directly competing business, breach of contracts with Vistage, and to misuse its trade secrets." (ECF No. 33 at 3.)

"In determining whether alter ego liability applies, [federal courts] apply the law of the forum state." *In re Schwarzkopf*, 626 F.3d 1032, 1037 (9th Cir. 2010) (citing *Towe Antique Ford Found. v. I.R.S.*, 999 F.2d 1387, 1391 (9th Cir. 1993)). "California recognizes alter ego liability where two conditions are met: First, where there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased; and, second, where adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice." *In re Boon Global Ltd.*, 923 F.3d 643, 653 (9th Cir. 2019) (quoting *In re Schwarzkopf*, 626 F.3d at 1038) (internal quotation marks and ellipsis omitted); *see Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (same test for personal jurisdiction). "Factors suggesting an alter ego relationship include [c]ommingling of funds and other assets [and] failure to segregate funds of the separate entities; the treatment by an individual of the assets of the corporation as his own; the disregard of legal formalities and the failure to maintain arm's length relationships among related entities; [and] the diversion [of assets from a

---

[4]    Plaintiff alleges that TGMV filed a fictitious name statement for BOAR in June 2018, which Defendants admit in their answer. (ECF No.1 at ¶ 2; ECF No. 7 at ¶ 1.)

corporation by or to a] stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets between entities so as to concentrate the assets in one and the liabilities in another." *Id.* (quoting *Associated Vendors, Inc. v. Oakland Meat Co., Inc.*, 210 Cal. App. 2d 825 (1962)) (internal quotation marks and ellipses omitted).

Upon review, Plaintiff has not pled any of the elements of alter ego in its complaint. (*See* ECF Nos. 1; 25 at 8-9; 8 at 12-13.)  There are no factual allegations in the complaint suggesting that TGMV (and BOAR) is the alter ego of Knudsen.  Rather, Plaintiff acknowledges in the complaint that TGMV was formed by four individuals: Todd Nigro, Guy Wells, Michael Reiss, and Virginia Knudsen.  (*See id.* at ¶¶ 4, 23.)

On the other hand, in support of its motion for protective order, TGMV submitted a declaration from Nigro stating that TGMV was formed by four individuals including Knudsen.  (*See* ECF No. 25-1.)  Nigro avers under penalty of perjury that Knudsen "has only a 25% membership interest in TGMV and is paid as an independent contractor."  (*Id.* at ¶ 7.)  Nigro further states that TGMV "operates under its own EIN, with bank accounts and records separate and apart from any other entity or person" and is not a member, manager, parent, subsidiary, or affiliate of Leaders Edge.  (*Id.* at ¶¶ 11-12.)  Plaintiff has neither adduced any evidence to contradict these statements nor even alleged facts to the contrary.

"[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants," the court need not permit even limited discovery.  *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (quoting *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988)).  Here, because Plaintiff has offered nothing more than a conclusory allegation that Knudsen is the alter ego of TGMV/BOAR in the face of specific denials by TGMV/BOAR, the Court finds that discovery concerning the corporate structure of TGMV/BOAR would amount to nothing more than a "fishing expedition."  *See Barantsevich*, 954 F. Supp. 2d at 997; *see also Boschetto*, 539 F.3d at 1020 (denial of discovery request not an abuse of discretion where request "was based on little more than a hunch that it might yield jurisdictionally

relevant facts"); *Martinez v. Manheim Cent. Cal.*, No. 1:10–cv–01511–SKO, 2011 WL 1466684, *5 (E.D. Cal. Apr. 18, 2011) (denying jurisdictional discovery on an alter ego theory because "Plaintiffs' assertion that Cox and Manheim may not be separate entities is entirely speculative" and "Plaintiffs have not alleged in their complaint or identified in their opposition brief any facts that remotely tend to support this contention"; and stating that discovery is not "appropriate in the absence of a minimal factual showing supporting personal jurisdiction . . . where no theory has been posited about what facts would be discovered and what they would show if Plaintiffs were permitted to fish on a hunch that something might be caught in a widely-cast net").

For the foregoing reasons, the Court grants Defendants' motion for a protective order as to Plaintiff's request for jurisdictional discovery on its alter ego theory.

## C.    Agency

Under its agency theory, Plaintiff contends that Knudsen was TGMV's agent in 2018 at the time of the formation and operation of the Transition Agreements and therefore, TGMV is directly bound by the forum selection clause incorporated by the Transition Agreements by virtue of its agent, Knudsen, signing the agreements. (*See* ECF Nos. 30 at 8; 33 at 7-9; *see also* ECF No. 33 at 3 ("[T]he timing of TGMV's creation and operation by Knudsen imputes liability to TGMV for the provisions of the Contracts, particularly the forum selection clause.").)[5]

Regarding its discovery requests, Plaintiff claims that the formation and operation of the Transition Agreements are particularly relevant. (ECF No. 33 at 7.) The Transition Agreements were signed on August 1, 2018 and December 7, 2018. (ECF No. 1 at ¶ 26; *see also* ECF No. 1-2 at 34-37.) TGMV has submitted a declaration stating that TGMV's

---

[5]    Plaintiff also appears to be making a broader agency argument, contending that Knudsen's alleged acts (*e.g.*, "breaches of contract and theft of trade secrets") can be imputed to TGMV for purposes of a purposeful direction analysis. (*See* ECF Nos. 30 at 3, 6; 33 at 7.) The Court will address this argument below while discussing Plaintiff's purposeful direction theory.

19-cv-01351-W (JLB)

articles of incorporation were filed on March 12, 2018 and that Knudsen was one of the four managers and members of TGMV.  (ECF No. 25-1.)

Given the foregoing, the Court finds that Plaintiff is entitled to discovery on the issue of whether Knudsen was acting as an agent on behalf of TGMV when she signed the Transition Agreements.  The Transition Agreements, signed by Knudsen, effectively incorporate the terms and conditions of MSA 2, which includes a forum selection clause.  (*See* ECF No. 1-2 at 24, 34-37.)

For the foregoing reasons, the Court denies TGMV's motion for protective order to the extent Plaintiff seeks discovery relevant to its agency theory.  Specifically, Plaintiff is entitled to discovery on Knudsen's role with TGMV at the time the Transition Agreements were signed and TGMV's knowledge, review, consideration, analysis, and understanding of the Transition Agreements at the time they were signed or, if Knudsen's signing of the Transition Agreements was later ratified by TGMV, at the time of the ratification.

### D.    Purposeful Direction

Lastly, Plaintiff alleges that TGMV "was formed in part by Knudsen, and therefore, TGMV had actual and/or imputed knowledge that her conduct in forming and operating BOAR would harm Vistage."  (ECF No. 1 at ¶ 6.)  Plaintiff further alleges that "TGMV knew or reasonably should have known that the conduct of Knudsen to form, develop, and/or operate BOAR based on the allegations within this complaint would damage Vistage, a company with its principal place of business in San Diego County, California."  (*Id.*)  In apparent support of this argument, Plaintiff cites a case applying the purposeful direction test, *CollegeSource, Inc.*  (*Id.*)

As previously stated, under the purposeful direction test, a defendant has purposefully directed his activities at the forum if he: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Picot*, 780 F.3d at 1213-14 (citation omitted).  Here, it appears that Plaintiff is relying on *CollegeSource, Inc.* for the proposition that the express aiming prong of the purposeful direction test is met where "the nonresident defendant

'knew of [the plaintiff's] existence, targeted [the plaintiff's] business, and entered direct competition with [the plaintiff].'" 653 F.3d at 1078 (quoting *Brayton Purcell LLP*, 606 F.3d at 1130). However, in *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017), the Ninth Circuit recognized the following:

> In *Walden* [*v. Fiore*, 571 U.S. 277, 134 S. Ct. 1115 (2014)], the Supreme Court rejected our conclusion that the defendants' "knowledge of [the plaintiffs'] 'strong forum connections,'" plus the "foreseeable harm" the plaintiffs suffered in the forum, comprised sufficient minimum contacts. 134 S. Ct. at 1124-25 (citation omitted). The Court found that our approach "impermissibly allow[ed] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* at 1125. The Court made clear that we must look to the defendant's "own contacts" with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum. *Id.* at 1124-25.

*Id.* at 1069-70; *see also Picot*, 780 F.3d at 1214 (citing *Walden*, 571 U.S. at 290). Therefore, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290.

Plaintiff's deposition notice seeks discovery relevant to the question of whether TGMV's conduct connects it to California in a meaningful way. (*See, e.g.*, ECF No. 25-2 at Topics 3, 4, 9, 10 and Requests for Production 3, 4, 9, 10). Plaintiff's notice also seeks discovery regarding TGMV's agency relationship with Knudsen. (*See e.g., id.* at Topic 5.) "For purposes of personal jurisdiction, the actions of an agent are attributable to the principal." *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990); *see also CollegeSource, Inc.*, 653 F.3d at 1077-78 (analyzing agency in the context of the "express aiming" prong of the three-part "effects" test) (citing *Sher*, 911 F.2d at 1362 and *Burger King*, 471 U.S. at 479 n. 22).

Based on the foregoing, the Court denies the motion for protective order to the extent Plaintiff is seeking information and documents regarding TGMV's suit-related connections with California, and any suit-related connections of Knudsen with California which can be attributed to TGMV under an agency theory. *See Walden*, 571 U.S. at 284 ("For a State to

exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."); *Axiom Foods, Inc.*, 874 F.3d at 1070 (considering evidence of defendant "Acerchem UK's contacts with California" and concluding that "Acerchem UK's 'suit-related conduct' did not 'create a substantial connection with [California]'"); *Picot*, 780 F.3d at 1215 (finding the plaintiff failed to make a prima facie showing of specific personal jurisdiction where "none of [the defendant's] challenged conduct had anything to do with [California] itself").

However, the Court finds that the topics and document requests identified by Plaintiff are overbroad. Accordingly, the Court limits Plaintiff's permissible discovery under this theory to the following: (1) all suit-related contacts between TGMV/BOAR and California; and (2) all suit-related contacts between Knudsen and California which can be attributed to TGMV under an agency theory (*e.g.*, contacts directed by TGMV or later-in-time approved by TGMV).

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for a protective order. Therefore, as set forth above, TGMV shall provide a Rule 30(b)(6) witness to testify on the following topics:

- Knudsen's role with TGMV at the time the Transition Agreements were signed and TGMV's knowledge, review, consideration, analysis, and understanding of the Transition Agreements at the time they were signed or, if Knudsen's signing of the Transition Agreements was later ratified by TGMV, at the time of the ratification.

- All suit-related contacts between TGMV/BOAR and California.

- All suit-related contacts between Knudsen and California which can be attributed to TGMV under an agency theory (*e.g.*, contacts directed by TGMV or later-in-time approved by TGMV).

TGMV shall also produce documents responsive to the following requests:

- All DOCUMENTS pertaining to Knudsen's role with TGMV at the time the Transition Agreements were signed or, if Knudsen's signing

of the Transition Agreements was later ratified by TGMV, at the time of the ratification.

- All suit-related contacts between TGMV/BOAR and California.

- All suit-related contacts between Knudsen and California which can be attributed to TGMV under an agency theory (*e.g.*, contacts directed by TGMV or later-in-time approved by TGMV).

**IT IS SO ORDERED.**

Dated: January 7, 2020

Hon. Jill L. Burkhardt
United States Magistrate Judge

19-cv-01351-W (JLB)